**AGRISTOR LEASING, Plaintiff,**

v.

**Michael and Jean GUGGISBERG, Defendants and Third-Party Plaintiffs,**

v.

**HAWKE & COMPANY HARVESTORE, INC., A.O. Smith Harvestore Products, Inc., a Delaware corporation, A.O. Smith Corporation, a New York corporation, Third-Party Defendants.**

Civ. No. 4–84–536.

United States District Court, D. Minnesota, Fourth Division.

Sept. 17, 1985.

Boyd Beccue, Schneider, Beccue & Kallestad, Willmar, Minn., for Michael and Jean Guggisberg.

James B. Wallace, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for Hawke & Co. Harvestore, Inc.

Steven C. Eggimann, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for A.O. Smith Corp. and A.O. Smith Harvestore Products, Inc.

## MEMORANDUM OPINION
## AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff, AgriStor Leasing (AgriStor), brought this action for damages, a writ of replevin, and attorney's fees and costs against defendants, Michael Guggisberg and Jean Guggisberg, alleging breach of lease and wrongful detention of property.[1] Jurisdiction is alleged under 28 U.S.C. § 1332. Defendants have counterclaimed, alleging strict liability, negligence, breach of warranty, and misrepresentation. They seek compensatory and punitive damages, as well as attorney's fees. Defendants have also brought a third-party complaint against A.O. Smith (Smith), A.O. Smith Harvestore Products, Inc. (AOSHPI), and Hawke and Company Harvestore, Inc. (Hawke) and assert the same allegations as in the counterclaim against these parties. They also seek contribution or indemnity.

The matter is now before the court upon the motions of Smith, AOSHPI and Hawke for summary judgment on all counts of the third-party complaint.[2] Hawke has also moved, in the alternative, for summary judgment for indemnity against AOSHPI.

## BACKGROUND

Michael and Jean Guggisberg are farmers residing near Lake Benton, Minnesota. Smith is a New York corporation currently engaged in the manufacture and sale of automotive frames, water heaters, and electric motors. In the late 1940's, Smith began to develop a line of agricultural equipment used to store animal feed. This equipment was eventually marketed by Smith under the name Harvestore. In 1961, third-party defendant AOSHPI, a Delaware corporation, was incorporated to develop, manufacture, and distribute Harvestore equipment. AOSHPI is a wholly-owned subsidiary of Smith. Hawke is an independent dealership selling, installing and servicing primarily products made by AOSHPI.

On March 19, 1982, the Guggisbergs entered into a contract with Hawke to purchase a Harvestore system. Before the sale, Jerry Teigland, a salesperson for Hawke, prepared projections of the savings and advantages which third-party plaintiffs would enjoy if the Harvestore were used effectively. These projections were based on information Teigland gathered mainly from A.O. Smith and AOSHPI publications. The Guggisbergs have submitted copies of brochures about the Harvestore system which were given to them by Teigland before the sale. Michael Guggisberg states that he relied on the representations in these brochures that the Harvestore was oxygen-limiting in deciding whether to buy the Harvestore. Installation of the Harvestore was completed by May 25, 1982. The Guggisbergs allege that they began to no-

---

1. On October 16, 1984, based upon the parties' stipulation, this court ordered that AgriStor was entitled to repossess the 18B 2588 Harvestore System with 25' Goliath Unloader.

2. AgriStor also filed a motion for summary judgment, but the court was informed before the hearing that AgriStor and the Guggisbergs had resolved their disputes. The Guggisbergs have apparently signed a confession of judgment.

tice problems with the feed stored in the Harvestore structure immediately.

The Guggisbergs contend that the Harvestore has been sold for more than thirty years under the claim that it is oxygen-limiting, even though Smith and AOSHPI were aware that it is not. They rely on several types of documents besides advertisements to support their fraud claim. They charge that various patents issued to Smith and AOSHPI admit that the structures do not limit oxygen. Several devices have been developed by Smith and AOSHPI to control the problem of air entry, but according to the Guggisbergs, these have not been offered for sale. The Guggisbergs also cite several reports written by AOSHPI engineers, one of whom worked for Smith in the late 60s on an air control project. They claim that these reports and interoffice memoranda show that Smith and AOSHPI have chosen to ignore data contrary to their claims and to conceal it from the public.

The Guggisbergs also note that James N. Johnson, chief corporate counsel for Smith, wrote a memorandum dated January 3, 1968 entitled "Continuing Harvestore Difficulties." In the memo, he suggested that to avoid creating more "damning evidence", writings concerning the Harvestore problems be kept to a minimum and addressed to the Law Department as well as the interested party. Then, in litigation, the lawyer-client privilege could be invoked. Johnson has subsequently admitted that the memo was genuine, but has asserted that no documents were handled in this manner.

Finally, the Guggisbergs state that an engineer, Robert Zoyiopoulos, will testify that the Harvestore does not control access of oxygen as well as conventional concrete silos. He will also testify as he has in several other cases, that Smith and AOSHPI knew that the structure was not oxygen-limiting.

*Discussion*

In passing upon a motion for summary judgment, the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Fields v. Gander,* 734 F.2d 1313, 1314 (8th Cir.1984); *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). Thus, these movants must establish their right to judgment as a matter of law; there must be no genuine issue of fact and no room for doubt or controversy.

*A. Statute of Limitations*

■ The third-party defendants argue that *Minn.Stat.* § 541.051 bars the third-party claims entirely. They contend that the Harvestore is an improvement to realty and that the Guggisbergs failed to bring their action within two years after they discovered the defect. The Guggisbergs respond by noting, among other things, that the terms of the purchase order specifically provides that the Harvestore "shall at all times be and remain personalty which is severable from the Buyer's farm." Moreover, even if the statute were somehow applicable, the Guggisbergs claim that they did not discover the defect until within the two-year time period.

*Minn.Stat.* § 541.051 provides:

Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to the property, real or personal, or of bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property ... shall be brought against any person performing or furnishing the design, planning, supervision, material, or observation of construction for construction of the improvement to real property ... more than two years after the discovery thereof ... *Minn.Stat.* § 541.051, subd. 1 (1980).

The Minnesota Supreme Court in *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977) previously defined an "improvement to property" as:

[A] permanent addition to or betterment of real property that enhances its capital

value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

In the instant case *Minn.Stat.* § 541.051 is inapplicable because the parties to the sales agreement specifically agreed that the equipment would "at all times" be considered severable personalty. Third-party defendants argue that this language was only intended to be controlling under Article 9 of the Uniform Commercial Code, but their argument is unpersuasive. Nowhere in the agreement does such a limited intent appear. Moreover, the statute on its face does not apply to cases where fraud is involved. The third-party claims are therefore not barred by *Minn.Stat.* § 541.051.

**B.  The Liability of Smith**

■ Smith argues that the Guggisbergs have advanced no legal theory upon which to base their claims. It relies on this court's dismissal of Smith in a similar case, *AgriStor Leasing v. Kjergaard*, Civ. No. 4–83–756 (D.Minn. March 20, 1985), and an affidavit of a company employee, Joseph Michael-Kenney, to assert that the separate corporate existence of Smith should not be disregarded. The Guggisbergs, by contrast, stress that Smith is responsible for much of the Harvestore's design work, even after 1961 when AOSHPI was formed, and for its part in the concealment of the Harvestore's alleged defects. In particular, they rely on the deposition testimony of Rick Jones, a Smith engineer, to show that Smith engaged in ongoing design work on the Harvestore. They also cite the memorandum of James Johnson, chief corporate counsel for Smith, which discusses the handling of memoranda concerning Harvestore difficulties.

Smith argues that such evidence is not sufficient to pierce the corporate veil. It concedes that AOSHPI occasionally requested the use of its in-house legal counsel and research and development staff, but asserts that AOSHPI was always charged for such use.

The record shows that AOSHPI was incorporated in 1961 to take control over all phases of the production and sale of Harvestore structures and related products. The Guggisbergs have not shown that this incorporation was wrongful or that separate corporate formalities have not been followed. There has been no showing that AOSHPI was or is undercapitalized, for example. Nor have the Guggisbergs shown that Smith failed to distinguish between its facilities and AOSHPI's property. They have not demonstrated that Smith's staff was performing work for AOSHPI at Smith's instigation or expense. The testimony of Jones indicates that Smith's research and development staff was working on an intake control project at the specific request of AOSHPI. Jones depo. at 18 (cross examination). Under Minnesota law, the corporate veil is not lightly pierced. *See, e.g., Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979). The Guggisbergs have not shown that AOSHPI has been operated in an unjust manner or that it is an alter-ego of Smith. In the absence of such a showing, AOSHPI must be treated as a legal entity separate and apart from Smith. *See, Di Re v. Central Livestock Order Buying Co.*, 246 Minn. 279, 74 N.W.2d 518 (1956). Accordingly, Smith's motion for summary judgment should be granted as to all claims against it.

**C.  Fraud**

Third-party defendants AOSHPI and Hawke state that the Guggisbergs have failed to allege facts which would support their claims of fraud or misrepresentation. They claim that the statements cited in the Guggisbergs' third-party complaint are merely predictions of future events, opinions, or "puffery." They further claim that the record shows that the Guggisbergs did not rely on the advertising or statements, or did so unreasonably. Alternatively, Hawke seeks summary judgment on its indemnity claim against AOSHPI.[3]

---

**3.** This motion will be discussed *infra* at pp. 909–910.

The Guggisbergs, on the other hand, contend that AOSHPI and Hawke claimed the Harvestore was oxygen-limiting, a fact that is false and susceptible of knowledge. They claim that they were entitled to rely on that representation.

In Minnesota, the elements of fraud require the making of representation that is false, pertaining to a past or present fact which is material; the fact must be susceptible of knowledge; the representor must know it to be false or must assert it as of his own knowledge without knowing whether it is true or false; the representor must intend to have the other person induced to act; that person must be so induced to act or justified in acting; the action must be in reliance upon the representation; and the person must suffer damage which is attributable to the misrepresentation. *See Midland National Bank v. Perranoski*, 299 N.W.2d 404 (Minn.1980); *Berg v. Xerxes-Southdale Office Building Company*, 290 N.W.2d 612 (Minn.1980).

■ Viewing the facts in a light most favorable to plaintiff, as the court is required to do, the court finds that issues of material fact remain as to the fraud claims. The Guggisbergs have produced brochures which they received before deciding to purchase the Harvestore, along with various advertisements that they may also have seen at that time. These brochures and advertisements represent that the structure is oxygen-limiting, a fact "susceptible of knowledge." The record shows that genuine issues exist as to whether these representations were false and whether the Guggisbergs justifiably relied upon these representations. Summary judgment is thus inappropriate.

### D. Strict Liability and Negligence

AOSHPI and Hawke claim that the damages which third-party plaintiffs seek under strict liability and negligence theories are economic losses arising out of a commercial transaction. They contend that *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981) precludes any

tort recovery for such losses and limits the Guggisbergs to contract remedies.

*Superwood* was an action for losses sustained by a manufacturing business as a result of the failure of a cylinder in a hot plate press. The plaintiff in *Superwood* sought damages under theories of warranty, contract, negligence, and strict tort liability. The court held that the plaintiff's tort theories were precluded, stated:

> [E]conomic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability. 311 N.W.2d at 162.

The court pointed out that the Uniform Commercial Code (U.C.C.) governs the rights and remedies of parties to commercial transactions. "[T]o allow tort liability in commercial transactions would totally emasculate the [warranty and liability limitations] provisions of the U.C.C.", it reasoned. 311 N.W.2d at 162.

The Guggisbergs seek to avoid the force of *Superwood* by asserting that their alfalfa haylage and Holstein cows are "other property" which is specifically exempted from the doctrine. *Superwood* provides little guidance in construing the term "other property," but subsequent cases shed some light on the issue.

In *Minnesota Society of Fine Arts v. Parker-Klein*, 354 N.W.2d 816 (Minn.1984), the court held that in a commercial transaction a purchaser of allegedly defective brick could not recover in negligence or strict liability, from defendant brick manufacturer, the cost of repairing and replacing a portion of the structure in which the brick was incorporated. The court refused to hold that the building was "other property" because to do so would "effectively overrule *Superwood* as to every seller of basic materials such as concrete, brick or steel ..." 354 N.W.2d at 816. The court stated that non-recoverable "economic loss' has been defined as that

> resulting from the failure of the product to perform to the level expected by the buyer and commonly has been measured

by the cost of repairing or replacing the product and the consequent loss of profits, or by the diminution in value of the product because it does not work for the general purposes for which it was manufactured and sold. *Id* at 820–821.

The court also noted that other courts have focused not on whether damage has occurred to "other property", but instead on the nature of the defect and the manner in which the damage occurred. Where damage results from deterioration, internal breakage, or failure to live up to expectation, recovery is allowed only on a contract or warranty theory. On the other hand, where the damage is sustained from hazardous conditions or a sudden, calamitous occurrence, courts would allow recover under a tort theory. 354 N.W.2d at 821.

In *American Home Assurance Co. v. Major Tool and Machine, Inc.,* 767 F.2d 446 (8th Cir.1985), the court also examined the question of "other property" under *Superwood.* The court noted that *Superwood* expressly aligned itself with the philosophy of California strict liability law as set forth in *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). (In *Seely,* the plaintiff-purchaser claimed economic losses from the manufacturer of a truck alleging that it bounced violently and that its brakes were defective. The California Supreme Court refused to apply the strict liability doctrine to economic losses.) The Court of Appeals concluded that when *Superwood* speaks of damage to "other property," it envisions "such damage as would have occurred in *Seely,* if the truck's defective brakes had caused it to run into and damage a home." 767 F.2d at 447.

■ Applying these principles to the instant case, the court concludes as a matter of law that the alleged damage to the alfalfa feed and the Holstein cows is non-recoverable economic loss. The Harvestore structure in question was purchased for the purpose of storing feed for the Guggisbergs' dairy operation, a commercial venture. The essence of their complaint is that the Harvestore failed to perform as expected, and they seek to recover the resulting losses to their dairy farm, the loss of the benefit of their bargain. Under such circumstances, the court concludes, as a matter of law, that the Guggisbergs' alleged damage is an economic loss which is not exempted by the "other property" language of *Superwood.* Thus, their claims for negligence and strict liability cannot be maintained.[4]

### E. Disclaimers of Warranty and Consequential Damage

AOSHPI and Hawke argue that the Guggisbergs may not recover any consequential damages or any damages based on an express or implied warranty since the purchase agreement specifically disclaimed such warranties and damages. The Guggisbergs assert that AOSHPI is not a seller within the meaning of the U.C.C. and thus cannot disclaim liability, that the purchase agreement was not properly executed, that the disclaimers were not conspicuous, and that the disclaimers are unconscionable.

*Minn.Stat.* § 336.2–316 governs the exclusion or modification of warranties. Section 2 of that provision specifies the requirements that must be followed to negate implied warranties:

Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the lan-

---

**4.** This result is further supported by the holding of the court in *Purvis v. Consolidated Energy Products Co.,* 674 F.2d 217 (4th Cir.1982), a case involving a similar factual situation. In *Purvis,* the court refused to allow the plaintiff to recover under a strict liability theory damages to his tobacco crop caused by a defect in the ventilating system of a curing barn. Citing *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the court held that a show-

ing of physical injury to the tobacco did not establish that the barns were unreasonably dangerous to property or that they posed a safety hazard. Because an ordinary commercial risk of product ineffectiveness caused the plaintiff's loss, the court concluded that the remedy would lie in contract, not tort. 674 F.2d at 223.

In the instant case, the alleged damage was not caused by a sudden calamitous occurrence, but was a rise of product ineffectiveness.

guage must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.... *Minn.Stat.* § 336.1–201(10) defines a conspicuous clause or term as one which is so written that:

a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of the form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court.

Comment 10 to subsection 10 emphasizes that the bottom line is "whether attention can reasonably be expected to be called to ... [the term in question]." Courts have considered capitalization, typeface, contrasting color, and location of the clause in determining whether it is conspicuous. *See generally,* White & Summers, *Uniform Commercial Code,* § 12–5 (2d Ed.1980).

In the instant case, the disclaimers in question appeared on the back of the purchase agreement. The front page of the purchase agreement contains blank spaces on which the name of the parties, the quantity, the description of product, the price, the terms of payment, the desired delivery date and the installation date were filled in. The Guggisbergs signed this form near the top directly under language which conditioned their purchase upon their obtaining from AgriStor Leasing acceptable financing or a lease agreement. Toward the bottom, appearing between an empty line and a capitalized statement is a small notice which states: "NOTICE: Conditions of Sale are on the reverse side of this form and are a part of this order." On the reverse side, the disclaimers are set off in bold type with distinct headings and are capitalized. They appear over an area which is captioned "ACKNOWLEDGE-

MENT AND RELIANCE." This section states that the buyer has read and understood the terms, accepts them and relies on no others. A box to the right side of this section specifically requires the buyer's initials; below is a space for the buyer's signature. Neither the initials nor the signatures of the Guggisbergs appear here. Just below the space for the signatures of the sales person and buyer is the sentence "The above contract is subject to approval and acceptance by the Seller, and must be manually signed to complete contract." The salesperson Teigland did sign this space.

■ The critical question before the court is whether the disclaimer provisions here can be considered conspicuous. After carefully considering the matter, the court finds that the notice provision on the front of the purchase order is insufficient to bring to the attention of a reasonable buyer the presence of the disclaimers on back. *See Massey Ferguson v. Utley,* 439 S.W.2d 57 (Ky.Ct.App.1969); *see also General Elec. Credit Corp. v. Hoey,* 7 UCC 156 (N.Y.Sup.Ct.1970); *Williams v. College Dodge, Inc.,* 11 UCC 958 (Mich.Dist.Ct. 1972). While the word "notice" is capitalized, the rest of the sentence, apart form two letters, is not. The words forming the rest of the sentence are smaller than any others which appear on the page. The notice provision is underlined, but this merely causes it to blend in with the other lines and boxes. Viewed as a whole, the provision does not stand out sufficiently.[5] "A provision is not conspicuous when there is only a slight contrast with the balance of the instrument." *Greenspun v. American Adhesives, Inc.,* 320 F.Supp. 442, 444 (E.D. Pa.1970). Accordingly, the court will not enforce either of the disclaimers.

*F. Indemnification for Hawke*

■ Hawke argues that it is entitled to indemnification against AOSHPI for any

---

**5.** It could be argued that the form was devised to assure that the rear side was specifically pointed out by the seller. In this case, however, the buyers have not signed the rear of the form

and there is no indication that the disclaimer provisions were actually brought to their attention.

liability it might incur because of breach of warranty or because of the statements of its salesperson, Teigland. It contends that any statements or projections Teigland made were based on information and figures provided by AOSHPI. AOSHPI has not opposed such indemnification.

In *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977), the Minnesota Supreme Court modified the rules pertaining to indemnity which were first set forth in *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 372, 104 N.W.2d 843, 848 (1960).[6] The *Tolbert* Court held that indemnity is to be limited to those situations where the party seeking indemnity is not at fault (Rule 1–3 in *Hendrickson* ) or where the parties have contractually agreed to indemnity (Rule 5 in *Hendrickson* ). Thus, under *Tolbert*, a tortfeasor must accept responsibility for damages commensurate with its own relative culpability; the allocation of loss between joint tortfeasors takes place under the doctrine of contribution. 255 N.W.2d at 367.

Upon the current record, the court cannot find, as a matter of law, that Hawke is free from any fault with respect to the fraud and misrepresentation claims. Material questions of fact remain as to whether Hawke knew of the alleged Harvestore defects or whether it justifiably relied on the information it received from AOSHPI. Nor has Hawke shown that indemnity is appropriate on the breach of warranty issue. Summary judgment on the indemnity issue is inappropriate at this time.

### G. Punitive Damages

■ Third-party defendants argue that the circumstances of this case do not allow the recovery of punitive damages. The Guggisbergs respond that punitive damages under *Minn.Stat.* § 549.20 are available in cases of fraud.

*Minn.Stat.* § 549.20(1) allows for an award of punitive damages when the acts of defendants show a willful indifference to the rights or safety of others. Upon the current record, third-party defendants have not shown as a matter of law that the Guggisbergs' claims of fraud are insufficient to support a claim for punitive damages. Summary judgment as to the punitive damage claim must be denied at this time.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of A.O. Smith Corporation for summary judgment on all third-party claims is granted.

2. The motion of Hawke and Company Harvestore, Inc. for summary judgment on the third-party claims is granted with respect to that part of the third-party complaint which alleges negligence and strict liability, and denied with respect to the remaining third-party claims.

3. The motion of Hawke and Company Harvestore, Inc. for summary judgment for indemnity against A.O. Smith Harvestore Products, Inc. is denied.

4. The motion of A.O. Smith Harvestore Products, Inc. for summary judgment on the third-party claims is granted with re-

---

**6.** The Court in *Hendrickson* stated that a joint tortfeasor may recover indemnity only in the following situations:

(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
(2) Where the one seeking indemnity has incured liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.
(3) Where the one seeking indemnity has incurred liability because of a breach of duty owned to him by the one sought to be charged.

(4) Where the one seeking indemnity has incurred a liability merely because of a failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.
(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability for the character involved. *Hendrickson* 104 N.W.2d at 848. The court in *Tolbert* overruled the fourth category.

spect to the third-party claims alleging negligence and strict liability, and denied as to all the remaining third-party claims.

LET JUDGMENT BE ENTERED ACCORDINGLY.