**Carl HOLSTAD, Appellant,**

v.

**SOUTHWESTERN PORCELAIN, INC., Mid-State Ag., Inc., Respondents.**

**No. C0-87-2032.**

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied April 28, 1988.

Ronald R. Frauenshuh, Sr., Frauenshuh & Spooner, P.A., Paynesville, for Carl Holstad.

Robert E. Salmon, Meagher, Geer, Markham, Anderson, Flaskamp & Brennan, Minneapolis, for Southwestern Porcelain, Inc.

Stephen G. Andersen, Johnson & Lindberg, P.A., Minneapolis, for Mid-State Ag., Inc.

Heard, considered and decided by FOLEY, P.J., and NORTON and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Acting Judge.

Carl Holstad appeals the summary judgment determining that his breach of warranty claims are barred by the statute of limitations and that his tort claims are barred by the *Superwood* doctrine. He argues the trial court applied the wrong statute of limitations on his warranty claims. As to the tort claims, he argues the *Superwood* doctrine does not bar his action because he alleges damage to property not included in the sale contract.

## FACTS

Appellant runs a dairy farm in Kandiyohi County, Minnesota. In March 1979 he entered into a contract to purchase a prefabricated Sealstore silo manufactured by respondent Southwestern Porcelain, Inc., and installed by respondent Mid-State Ag., Inc. Mid–State delivered the silo parts in August 1979 and then assembled and installed the entire structure in three days.

The completed silo has a cement foundation 20 feet in diameter and stands 57 feet tall. It is constructed mostly of large steel panels bolted together, and equipped internally with silo unloaders, grates and a

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

large air bag. As contemplated by the parties, appellant stored his livestock's feed in the silo.

In early 1980, appellant noticed his dairy cows were sick and he subsequently notified Mid-State. In the fall of 1980, Mid-State replaced the silo's air bag, claiming the original bag was the wrong size. The problem continued, however, and appellant's animals continued to get sick.

It was finally discovered in the summer or fall of 1981 that the second air bag had been ripped, probably during installation in the fall of 1980. Appellant claims that from the time he first complained until discovery of the rip, Mid-State assured him there was nothing wrong with the silo or its installation.

Appellant's damages include loss of feed and decreased milk production. He claims the losses resulted from his animals' eating feed which had gone bad from exposure to air entering through the tear in the bag.

Appellant first attempted to serve his summons and complaint in September 1984 but was not finally successful until December 1984. He alleged breach of express and implied warranties under the Uniform Commercial Code. He also asserted tort claims based on theories of negligence and strict products liability.

In ordering summary judgment on the warranty claims, the trial court concluded the four year statute of limitations in Minn. Stat. § 336.2–725 (1978) applied. As these claims run from tender of delivery, August 1979, the trial court concluded the claims were time barred. Relying on the court's decision in *Superwood Corp. v. Siempel-kamp Corp.*, 311 N.W.2d 159 (Minn.1981), the trial court then concluded appellant's economic losses arising out of the commercial transaction were not recoverable under tort theories.

## ISSUES

1. What is the applicable statute of limitations governing appellant's breach of warranty claims?

2. When does the statute of limitations begin to run on appellant's breach of warranty claims?

3. May appellant bring a tort action for damages arising out of a commercial transaction?

## ANALYSIS

1. The provisions of Article 2 of the Uniform Commercial Code apply to transactions in goods. Minn.Stat. § 336.2–102 (1978). Goods are defined as all things which are movable at the time of identification to the contract for sale. Minn.Stat. § 336.2–105(1) (1978). In this case, the unassembled parts of the silo did constitute goods because they were movable at the time of identification to the contract, March 13, 1979. *See id.*

Although the unassembled silo parts are goods, the contract calling for sale and assembly is not necessarily a "transaction in goods" which comes within the provisions of Article 2. *See* Minn.Stat. § 336.2–102. In a hybrid contract such as this, Minnesota courts employ the "predominant factor" test to determine whether this is primarily a sale of goods or a provision of services. *Valley Farmers' Elevator v. Lindsay Brothers Company*, 398 N.W.2d 553, 556 (Minn.1987). The characterization of hybrid contracts is generally a question of law. *Id.*

The rendition of substantial amounts of labor does not necessarily exclude the transaction from the U.C.C. *Bonebrake v. Cox*, 499 F.2d 951, 959 (8th Cir.1974) (*cited in Valley Farmers*, 398 N.W.2d at 556). The *Valley Farmers* court concluded the sale and construction of a $504,000 3–bin grain storage and aeration system was predominantly a sale of goods, where less than $120,000 of the sale price was attributable to services.

From a review of the record, it appears appellant's Sealstore Silo required even less proportional labor than the system in *Valley Farmers*. Unlike the more simple Sealstore, the system in *Valley Farmers* involved custom design services and installation of electrically powered fans as part of an aeration system. In light of the

court's determination in *Valley Farmers,* we conclude the sale and installation of a stock Sealstore silo is predominantly a sale of goods and thus subject to the U.C.C.

The parties agree the completed silo is an improvement to real estate. Appellant argues Minn.Stat. § 541.051 (1978), which governs actions concerning improvements to real estate, should apply to this case. He correctly points out that this statute was declared unconstitutional. *See Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548, 555 (Minn.1977). (This unconstitutionality was cured by 1980 Minn.Laws ch. 518, §§ 2, 3. *See Calder v. City of Crystal,* 318 N.W.2d 838, 843 (Minn.1982).) Since section 541.051 was unconstitutional at the time of the contract, appellant claims the general six year contract statute of limitations should apply. *See* Minn.Stat. § 541.05, subd. 1 (1978).

The court in *Valley Farmers* dealt with and rejected this very argument. It held that a breach of warranty claim on a transaction in goods is governed by the four year limitation in section 336.2–725(1). *Valley Farmers,* 398 N.W.2d at 556–557. It explained that this four year statute applies to warranty claims even though the original unassembled goods have become an improvement to real estate. *Id.* at 556. Therefore, section 541.051 does not override the U.C.C. and applies only to common law claims concerning improvements to real estate. *Id.*

■ Appellant argues the U.C.C. should not apply because the tear in the air bag arose from poor service and not from any defect in the goods. However, if a transaction is covered by warranty provisions of the U.C.C., then those provisions also apply to claims based on incidental services, such as installation of a product. *O'Laughlin v. Minnesota Natural Gas Co.,* 253 N.W.2d 826, 831 & n. 2 (Minn.1977) (cited with approval in *Valley Farmers,* 398 N.W.2d at 555–56). Therefore, since the U.C.C. warranties apply to installation of the air bag, the four year U.C.C. statute of limitations applies.

2. The statute of limitations begins to run when the cause of action accrues.

Minn.Stat. § 336.2–725(1). A cause of action for breach of warranty accrues when the tender of delivery is made. Minn.Stat. § 336.2–725(2). In this case, tender of delivery was made in August 1979. Therefore, the four years would have run out in August 1983. Appellant argues the statute commenced to run at a later date or that its running was tolled for a period of time.

Appellant claims for the first time on appeal that his cause of action did not accrue until *discovery* of the torn air bag because respondents' warranties explicitly extended to future performance of the goods. *See* Minn.Stat. § 336.2–725(2). Alternatively, he argues the statute of limitations was tolled from the time respondents replaced the air bag until he discovered the tear. As appellant raised neither issue before the trial court, we may not consider them on appeal. *See Greer v. Kooiker,* 312 Minn. 499, 511–12, 253 N.W.2d 133, 142 (1977).

■ Finally, appellant asserts the statute's running was tolled because respondents knew the air bag was torn and fraudulently concealed this fact from appellant. A defendant fraudulently conceals a cause of action if it knows its representations are false or makes representations with reckless disregard for the truth. *Collins v. Johnson,* 374 N.W.2d 536, 541–42 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Nov. 26, 1985) (citing *Murray v. Fox,* 300 Minn. 373, 379, 220 N.W.2d 356, 360 (1974)). Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence. *Wild v. Rarig,* 302 Minn. 419, 450, 234 N.W.2d 775, 795 (1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

■ We find appellant has not shown sufficient facts to raise a genuine issue of whether there was fraudulent concealment. There is no evidence respondents knew or should have known about the torn air bag. Consequently, we cannot see how respondents' assurances that there was no dam-

age to the silo could be considered fraudulent.

■ 3. "[E]conomic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability." *Superwood*, 311 N.W. 2d at 162. It is clear appellant seeks damages for economic loss (loss of feed and reduced milked production) and that this was a commercial transaction. *Cf. Nelson v. International Harvester Corporation*, 394 N.W.2d 578, 581 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986) (farmers' purchases of combines were commercial transactions within the meaning of *Superwood* because they were non-consumer transactions where each party possessed some bargaining power). The only issue is whether the loss of feed and livestock and reduced milk production is damage to "other property" as contemplated by *Superwood*.

In a factually similar situation, a federal district court ruled that loss of feed and livestock was not damage to "other property" where the loss resulted from too much oxygen entering a grain storage bin. *See Agristor Leasing v. Guggisberg*, 617 F.Supp. 902, 908 & n. 4 (D.Minn.1985) (citing *Purvis v. Consolidated Energy Products Co.*, 674 F.2d 217 (4th Cir.1982)). The *Purvis* court had held that a farmer could not maintain a strict products liability action for damage to his tobacco crop resulting from defective curing barns. The court explained that a products liability claim in a commercial transaction is warranted only when the defect in the product is "dangerous to an extent beyond that which would be contemplated by the ordinary purchaser who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* 674 F.2d at 222 (quoting Restatement (Second) of Torts § 402A comment i). In citing the seminal case in this area, *Seely v. White Motor Corp.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the court stated that a loss resulting from mere product ineffectiveness was properly subject to the law of contracts and commercial transactions, not strict products liability. *Id.* at 223.

Although the Minnesota Supreme Court has yet to fully articulate the meaning of "other property," we believe both the *Agristor Leasing* and *Purvis* decisions are in accord with the policy underlying *Superwood*. Like the courts in *Agristor Leasing* and *Purvis*, the *Superwood* court followed the *Seely* decision in which the California Supreme Court stated that allowing a strict products liability claim in a commercial transaction would undermine the law of sales and not reflect the parties' understanding. *Seely*, 63 Cal.2d at 15, 45 Cal. Rptr. at 23–24, 403 P.2d at 151. The *Superwood* court expressed similar concern that allowance of tort claims in commercial transactions would emasculate U.C.C. provisions dealing with parties' rights and remedies. *Id.*, 311 N.W.2d at 162. In a subsequent decision, the supreme court stated it would thwart the policy implications of *Superwood* to allow an enormous tort recovery for damage resulting from a relatively minor defect in the property involved in the sales contract. *See Minneapolis Society of Fine Arts v. Parker-Klein Associates Architects, Inc.*, 354 N.W.2d 816, 820 n. 4 (Minn.1984).

■ We believe *Superwood* requires tort claims be allowed only in limited situations where the nature of the defect or damage is other than that which could ordinarily be contemplated by the parties to a commercial transaction. Consequently, we hold appellant cannot maintain a tort action because there was no damage to "other property," as that term is intended in *Superwood*.

## DECISION

The trial court's summary judgment in favor of respondents Mid-State Ag., Inc. and Southwestern Porcelain, Inc. is affirmed.

Affirmed.