30 F.3d 953
 24 UCC Rep.Serv.2d 471, Prod.Liab.Rep. (CCH) P 14,034
TRANSPORT CORPORATION OF AMERICA, INC., a Minnesota
corporation, Appellant,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, INC., a New
York corporation; Innovative Computing
Corporation, an Oklahoma corporation, Appellees.
 No. 93-1918.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1994.
Decided July 21, 1994.
Rehearing Denied Aug. 19, 1994.
 
 Joseph F. Lulic, Minneapolis, MN, argued, for appellant.
 Steven L. Severson, Minneapolis, MN, argued, for appellee IBM.
 Allen W. Hinderaker, Minneapolis, MN, argued, for appellant Innovative Computing.
 Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Transport Corporation of America, Inc. (TCA), appeals from a final order entered in the District Court[1] for the District of Minnesota granting summary judgment in favor of International Business Machines Corp. (IBM) and Innovative Computing Corp. (ICC). Transport Corp. of America, Inc. v. International Business Machines Corp., No. 4-91-CV-615 (D.Minn. Feb. 16, 1992) (order). For reversal TCA argues that the district court erred in holding that (1) the economic loss doctrine bars its tort claims, (2) IBM's disclaimer of implied warranties is effective against TCA as a subpurchaser, (3) IBM's limited remedy of repair and replace did not fail of its essential purpose, (4) ICC effectively disclaimed liability for consequential damages, and (5) the limited remedy provisions by IBM and ICC are not unconscionable. For the reasons discussed below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 TCA is a Minnesota corporation that operates a national trucking business, with its principal place of business in Minnesota. IBM is a Delaware corporation that manufactures and sells computers, with its principal place of business in New York. ICC is an Oklahoma corporation that produces software and resells IBM computers, with its principal place of business in Oklahoma.
 
 
 3
 In 1989 TCA decided to update its computer system, which is used to process incoming orders, issue dispatching assignments and store all distribution records. The information entered into the computer system is stored onto a backup system at 2:00 a.m. every day. TCA entered into an agreement to purchase an IBM computer system from ICC for $541,313.38. TCA subsequently executed a lease agreement which assigned to IBM Credit Corporation its right to purchase the IBM equipment from ICC, but TCA retained possession and use of the computer system. The computer system was installed at TCA's offices in Minneapolis on December 29, 1989.
 
 
 4
 On December 19, 1990, almost a year later, the computer system went down and one of the disk drives revealed an error code. TCA properly contacted IBM, and IBM dispatched a service person. Although TCA requested a replacement disk drive, the error code indicated that the service procedure was not to replace any components but to analyze the disk drive. TCA had restarted the computer system and did not want to shut it down for the IBM service procedure. IBM informed TCA that replacement was not necessary under the limited warranty of repair or replace, and agreed to return on December 22, 1990, to analyze the disk drive. On December 21, 1990, the same disk drive completely failed, resulting in the computer system being inoperable until December 22, 1990.
 
 
 5
 TCA alleges that the cumulative down-time for the computer system as a result of the disk drive failure was 33.91 hours. This includes the time to replace the disk drive, reload the electronic backup data and manually reenter data which had been entered between 2:00 a.m. and the time the system failed. TCA alleges that it incurred a business interruption loss in the amount of $473,079.46 ($468,514.46 for loss of income; $4,565.00 for loss of data and replacement media).
 
 
 6
 TCA originally brought this action against IBM and ICC in Minnesota state court, based on the failure of the disk drive purchased through IBM and ICC, alleging strict liability, negligence, breach of implied warranty, and breach of express warranty. IBM removed the action to the United States District Court for the District of Minnesota on diversity of citizenship grounds. 28 U.S.C. Secs. 1332(a)(1), 1441(a). IBM and ICC then moved for summary judgment on all counts. The district court granted the motions in favor of IBM and ICC on all counts. The district court applied Minnesota law and held that the economic loss doctrine barred TCA's tort claims, the terms of IBM's remarketer agreement with ICC "passed through" to TCA, IBM effectively disclaimed implied warranties, the remedy of repair or replace in IBM's express warranty did not fail of its essential purpose, and ICC's disclaimer of liability for consequential damages was not unconscionable. This appeal followed.
 
 II. DISCUSSION
 
 7
 We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir.1992); St. Paul Fire & Marine Insurance Co. v. FDIC, 968 F.2d 695, 699 (8th Cir.1992).
 
 
 8
 We review de novo the district court's determinations of state law. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 A. Economic Loss Doctrine
 
 9
 TCA argues that, under Minnesota law, tort claims are not barred by the economic loss doctrine if two conditions are met: there is damage to other property and the parties are not "merchants in goods of the kind." Because TCA is not a merchant in computer systems and the loss of data due to the failed disk drive constitutes damage to other property, TCA argues that the district court erred in holding claims for negligence and strict liability are barred. IBM argues that TCA did not suffer damage to other property because the data on the disk drive was integrated into the computer system. IBM also argues that the risk of failure of the disk drive (and the risk of loss of data due to failure of the disk drive) was reasonably contemplated by TCA. Thus, IBM argues that the Uniform Commercial Code (U.C.C.) as adopted in Minnesota controls the remedy in a transaction between sophisticated commercial parties.
 
 
 10
 The economic loss doctrine in Minnesota bars recovery under the tort theories of negligence or strict liability for economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property. Superwood Corp. v. Siempelkamp Corp., 311 N.W.2d 159, 162 (Minn.1981) (Superwood), overruled in part, Hapka v. Paquin Farms, 458 N.W.2d 683, 688 (Minn.1990) (Hapka) (holding U.C.C. controls exclusively with respect to damages in commercial transaction which involves property damage only). There are two issues in applying this doctrine to TCA's claim: whether the damages arose out of a commercial transaction and whether the damages claimed fall under the "damage to other property" exception.
 
 
 11
 In interpreting Superwood, the Minnesota Supreme Court has held that the U.C.C. controls exclusively with respect to remedies for property damage in a commercial transaction. Hapka, 458 N.W.2d at 688. In Hapka, the plaintiff and the defendant were both commercial farmers who grew seed potatoes. When contaminated seed potatoes sold by the defendant to the plaintiff infected other seed potatoes owned by the plaintiff, the plaintiff brought an action asserting negligence and strict liability. In applying Superwood to bar the tort action for economic loss based on damage to other property caused by the defective product, the Minnesota Supreme Court emphasized that the U.C.C. is intended to displace tort liability, and that tort exceptions for economic losses are applicable to consumer transactions only. Id. at 688.
 
 
 12
 TCA argues that because it does not buy and sell computer systems, the purchase was not between "merchants in goods of the kind" and therefore not a commercial transaction within the meaning of Hapka. Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11, 17 (Minn.1992) (en banc) (Den-Tal-Ez). TCA further argues that the loss of data on the disk drive constitutes damage to property other than the computer system, and that under Den-Tal-Ez the tort remedies of negligence and strict liability are therefore available. Id. at 17.
 
 
 13
 In Den-Tal-Ez, a motorized dental chair caught fire and allegedly caused substantial building damage. The plaintiff brought suit both in tort and for breach of warranties against the chair manufacturer for damage to other property (that is, damage to property other than the allegedly defective dental chair). Den-Tal-Ez, 491 N.W.2d at 13. The court stated:
 
 
 14
 [w]hen there is a claim by a buyer for damage to the defective product itself (and this includes consequential damages), the U.C.C. remedy is exclusive and tort will not lie.... A subpurchaser is also limited to the U.C.C. remedy. In this situation ... the product lacks its bargained-for value and fails to meet the buyer's or sub-buyer's performance expectations. This is exactly the kind of loss that the Code and its warranty protections are designed to cover. This economic loss includes the consequential damages for repair and loss of profits resulting from inability to use the defective product during the period of its replacement or repair.
 
 
 15
 Id. at 15. As the district court correctly noted, this pronouncement from Den-Tal-Ez applies directly to the instant case.
 
 
 16
 TCA is not a dealer in computers and thus not a merchant in goods of the kind. Therefore, the transaction between TCA and IBM and ICC was not a commercial transaction for purposes of the economic loss doctrine. However, we hold that the economic loss doctrine does apply here because TCA did not experience damage to other property within the meaning of the doctrine. Under Minnesota law, "where a defect in a component part damaged the product into which that component was incorporated, economic losses to the product as a whole were not losses to 'other property.' " Minneapolis Society of Fine Arts v. Parker-Klein Assocs. Architects, Inc., 354 N.W.2d 816, 820 (Minn.1984) (citing cases) Minneapolis Society of Fine Arts), overruled on other grounds, Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn.1990).
 
 
 17
 In Minneapolis Society of Fine Arts, a claim was made that defective bricks damaged the building into which they had been incorporated. In discussing the economic loss caused by the allegedly defective bricks, the court stated that "[t]o hold that buildings constitute 'other property' would effectively overrule Superwood as to every seller of basic building materials ... because the 'other property' exception would always apply. The U.C.C. provisions as applicable to component suppliers would be totally emasculated." 354 N.W.2d at 820 (footnote omitted). Thus, damage to other components integrated into a single unit are not considered damage to other property for purposes of the economic loss doctrine.
 
 
 18
 Here, the electronic data stored on the disk drive was integrated into the computer system. If the disk drive had started a fire that caused damage to property outside of the computer system, then the exception to the economic loss doctrine as applied in Den-Tal-Ez would be applicable. 491 N.W.2d at 15, citing Hapka, 458 N.W.2d at 688 (if defective coffee pot starts a fire which burns down a building, the coffee pot purchaser could sue in tort as well as for breach of warranty for damages to the building).
 
 
 19
 Furthermore, TCA was aware of the risk of computer system failure and possible loss of data. In applying Superwood, the Court of Appeals of Minnesota held that "tort claims [are] allowed only in limited situations where the nature of the defect or damage is other than that which could ordinarily be contemplated by the parties to a commercial transaction." Holstad v. Southwestern Porcelain, Inc., 421 N.W.2d 371, 375 (Minn.Ct.App.1988) (Holstad). The fact that TCA backed up the disk drive at 2:00 a.m. every day objectively demonstrates that TCA realized the risk of its failure.
 
 
 20
 TCA argues that Superwood and Holstad were expressly overruled by the Minnesota Supreme Court in Hapka, and that under Den-Tal-Ez tort claims are never barred in commercial transactions so long as the parties are not "merchants in goods of the kind." We disagree. Hapka overruled Superwood and its progeny only to the extent that they are contrary to the U.C.C.'s exclusive damages in commercial transactions involving property damage only. Hapka, 458 N.W.2d at 688. Minnesota courts have consistently held that the U.C.C. should apply to commercial transactions where the product merely failed to live up to expectations and the damage did not result from a hazardous condition. Den-Tal-Ez, 491 N.W.2d at 15; Hapka, 458 N.W.2d at 687-88; Minneapolis Society of Fine Arts, 354 N.W.2d at 820-21; Superwood, 311 N.W.2d at 161-62; Holstad, 421 N.W.2d at 375. Because failure of the disk drive was contemplated by the parties and the damage was limited in scope to the computer system (into which the disk drive and its data were integrated), TCA must look exclusively to the U.C.C. for its remedy.
 
 
 21
 TCA also argues that Independent School Dist. No. 622 v. Keene Corp., 495 N.W.2d 244 (Minn.Ct.App.1993) (school district allowed to sue in tort for cost of asbestos removal), aff'd in part and rev'd in part, 511 N.W.2d 728 (Minn.1994), supports its tort claims. That case does not support TCA's argument because the court held that the claim for the costs of asbestos removal was not one for economic loss. 495 N.W.2d at 247, citing 80 South Eighth Street Ltd. Partnership v. Carey-Canada, Inc., 486 N.W.2d 393, 397 (Minn.) (claim is for contamination of buildings, not for damages caused by defective product), amended in part, 492 N.W.2d 256 (1992).
 
 B. IBM's Disclaimer of Implied Warranties
 
 22
 TCA next argues that because it was not a party to the negotiations between ICC and IBM, it is not bound by the terms of the remarketer agreement, including IBM's disclaimer of implied warranties. TCA also argues that any disclaimers of implied warranties by IBM are not binding because they were not delivered at the time of the sale. IBM argues that the remarketer agreement between IBM and ICC included a valid disclaimer of implied warranties, and the U.C.C. as enacted in Minnesota operates to extend the disclaimer as a matter of law to TCA as the ultimate purchaser or end user.
 
 
 23
 The U.C.C. as adopted in Minnesota has a privity provision that operates to extend all warranties, express or implied, to third parties who may reasonably be expected to use the warranted goods. Minn.Stat.Ann. Sec. 336.2-318 (West Supp.1994).[2] The seller can disclaim implied warranties. Id. Sec. 336.2-316.[3] Disclaimers of implied warranties are extended to third party purchasers by operation of Sec. 336.2-318. Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 916 (Minn.1990) (Hydra-Mac); see also SCM Corp. v. Deltak Corp., 702 F.Supp. 1428, 1432-33 (D.Minn.1988) (applying Minnesota law).
 
 
 24
 The remarketer agreement between IBM and ICC included a disclaimer of "ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." As the district court correctly noted, this language complies with the requirements of Minn.Stat.Ann. Sec. 336.2-316(2) (that is, it was in writing, conspicuous and mentioned merchantability) and thus effectively disclaimed all implied warranties.
 
 
 25
 Even assuming that TCA did not receive a copy of the warranty disclaimer, TCA's claim of breach of implied warranties by IBM fails as a matter of law. TCA argues that the disclaimer must be delivered at the time of the sale. See, e.g., Noel Transfer & Package Delivery Service, Inc. v. General Motors Corp., 341 F.Supp. 968, 970 (D.Minn.1972) (Noel Transfer ) (burden is on party asserting the disclaimer to establish disclaimer was delivered at time of sale and constituted an integral part of the transaction). Noel Transfer is distinguishable from the present case because it did not involve a third party transaction. Thus, operation of Minn.Stat.Ann. Secs. 336.2-316, .2-318 extends IBM's disclaimer of implied warranties to TCA as a matter of law. Hydra-Mac, 450 N.W.2d at 916.
 
 
 26
 C. IBM's Limited Remedy of Repair or Replace
 
 
 27
 TCA next argues that the district court erred in holding that IBM and ICC effectively limited the remedy to repair or replace. TCA argues IBM's limited warranty of repair or replace failed of its essential purpose because there was a latent defect and the remedy provided for in the warranty was not provided.
 
 
 28
 Under Minnesota law, "[a]n exclusive remedy fails of its essential purpose if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain." Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349, 356 (Minn.1977) (Durfee), citing Minn.Stat.Ann. Sec. 336.2-719, U.C.C. Comment 1. A repair or replace clause does not fail of its essential purpose so long as repairs are made each time a defect arises. Durfee, 262 N.W.2d at 356.
 
 
 29
 It is undisputed that IBM repaired the disk drive after it failed. TCA argues that latency of the defect in and of itself mandates that the limited remedy of repair or replace fails of its essential purpose. TCA cites no cases that hold that a remedy of repair failed of its essential purpose when, after a single failure, the system was fully repaired within one day, and so the rule from Durfee controls and the remedy is adequate.
 
 
 30
 TCA further claims that IBM's failure to replace the defective disk drive before the malfunction occurred caused the remedy to fail of its essential purpose. The computer system was fully operational between the time the computer system first revealed an error code for the disk drive and the time the disk drive failed. The drive failure occurred two days after the error code was revealed and one day before IBM was scheduled to perform diagnostic service. When the disk failed, IBM provided warranty service on the disk drive and repaired it. Given these undisputed facts, IBM's remedy of repair or replace did not, as a matter of law, fail of its essential purpose.
 
 
 31
 D. ICC's Disclaimer of Consequential Damages Liability
 
 
 32
 TCA next argues that ICC's disclaimer for consequential damages fails of its essential purpose. A seller may limit or exclude consequential damages unless the limitation is unconscionable. Minn.Stat.Ann. Sec. 336.2-719(3).[4] The U.C.C. encourages negotiated agreements in commercial transactions, including warranties and limitations. Hapka, 458 N.W.2d at 688. "It is at the time of contract formation that experienced parties define the product, identify the risks, and negotiate a price of the goods that reflects the relative benefits and risks to each." Id. An exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law. American Computer Trust Leasing v. Jack Farrell Implement Co., 763 F.Supp. 1473, 1489 (D.Minn.1991) (American Computer ) (applying Minnesota law), aff'd and remanded, 967 F.2d 1208 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992).
 
 
 33
 In the agreement between ICC and TCA, TCA expressly agreed to an ICC disclaimer that stated in part "IN NO EVENT SHALL ICC BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS LOSSES OF ANTICIPATED PROFIT OR OTHER ECONOMIC LOSS IN CONNECTION WITH ... THIS AGREEMENT."
 
 
 34
 We agree with the district court that the disclaimer of consequential damages was not unconscionable and that the damages claimed by TCA, for business interruption losses and replacement media, were consequential damages as defined by Minn.Stat.Ann. Sec. 336.2-715(2).[5] Furthermore, TCA and ICC were sophisticated business entities of relatively equal bargaining power. ICC's disclaimer was not unconscionable and TCA is therefore precluded from recovering consequential damages. American Computer, 763 F.Supp. at 1489.
 
 III. CONCLUSION
 
 35
 In sum, TCA's procurement of an IBM computer system through ICC, for purposes of conducting its business, was a transaction between sophisticated parties. Potential failure of the disk drive was contemplated by the parties, and any property damage was to property integrated into the computer system. The economic loss doctrine therefore bars TCA's tort claims and limits TCA's remedies to those provided by the U.C.C. as enacted by Minnesota. IBM properly disclaimed implied warranties in its remarketer agreement with ICC, and this disclaimer passed through to TCA as a matter of law, limiting TCA's remedy to the warranty provision of repair or replace, which did not fail of its essential purpose. Finally, ICC properly disclaimed consequential damages in the agreement between ICC and TCA.
 
 
 36
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [2]
 Minn.Stat.Ann. Sec. 336.2-318 (West Supp.1994) (Third party beneficiaries of warranties express or implied) states: "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section."
 
 
 [3]
 Minn.Stat.Ann. Sec. 336.2-316 (West 1966) (Exclusion or modification of warranties) states (in relevant part):
 (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable and consistent with each other; ...
 (2) ... to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
 
 
 [4]
 Minn.Stat.Ann. Sec. 336.2-719(3) (West 1966) provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."
 
 
 [5]
 Minn.Stat.Ann. Sec. 336.2-715 (West 1966) provides (in pertinent part):
 (2) Consequential damages resulting from the seller's breach include
 (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
 (b) injury to person or property proximately resulting from any breach of warranty.