LUIGINO'S, INC., Plaintiff,

v.

**PEZROW COMPANIES, INC., and Pezrow Corporation of New Jersey, Inc., Defendants.**

**CIV. No. 5–96–244 (JRT/RLE).**

United States District Court,
D. Minnesota,
Fifth Division.

March 3, 1998.

George Gregory Eck, Robert J Borhart, Dorsey & Whitney, Mpls, MN, for Plaintiff.

Jon S Swierzewski, Karin M Nelson, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for Defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion for leave to amend its Complaint in order to assert a claim for punitive damages.

A Hearing on the Motion was conducted on January 15, 1998, at which time, the Plaintiff appeared by George G. Eck, Esq., and the Defendant appeared by Jon S. Swierzewski, Esq.[1]

For reasons which follow, we deny the Motion.

### II. *Discussion*

The Plaintiff is a manufacturer, and seller, of food products which contracted with the Defendants, through a Brokerage Agreement, to allow the Defendants to act as a broker of the Plaintiff's products, and to act in the Plaintiff's name, and for the Plaintiff's account. During the course of their service as the Plaintiff's broker, the Defendants dealt with John Denser ("Denser"), who worked for the Plaintiff as a Zone Manager. The Plaintiff alleges that Denser conspired with the Defendants to defraud the Plaintiff by, among other means, the submission of false orders for the Plaintiff's products, and the securing of false bonuses, and other compensation, for wrongful sales of the Plaintiff's merchandise.

In an eleven-Count Complaint, that was filed on August 22, 1996, the Plaintiff alleges the following causes of action against the Defendants: Fraud and Misrepresentation; Breach of Contract; Breach of Duties of Good Faith and Fair Dealing; Unjust Enrichment; Civil Conspiracy; Violation of Consumer Fraud Statute, *Minnesota Statutes Section 325F.69;* Violation of False Advertising Statute, *Minnesota Statutes Section 325F.67;* Tortious Interference with Economic Relations; Defamation; Violation of Racketeering Influenced and Corrupt Organizations Act, *Title 18 U.S.C. § 1962(c);* and Violation of Robinson–Patman Act, *Title 15 U.S.C. § 13(a).* On December 6, 1996, the Court entered a Pretrial Schedule which established, among other deadlines, a cutoff date of February 15, 1997, for the amendment of pleadings. Thereafter, at the parties' joint request, on April 7, 1997, August 8, 1997, and December 1, 1997, the Court entered Orders which modified certain of the pretrial deadlines, but which left the period, in which the parties could seek to amend their pleadings, unchanged.

On January 2, 1998, the Plaintiff filed its Motion for Leave to Amend its Complaint, pursuant to Minnesota Statutes Section 549.191, in order to assert a claim for punitive damages. The Defendants oppose the Motion as untimely, and as futile, since the Plaintiff has not suffered any personal injury, so as to give rise to a viable punitive damage claim. We examine the respective positions of the parties, by first addressing the procedural propriety of the proposed amendment, and then evaluating the Motion's substantive merit.

### A. *The Timeliness of the Motion to Amend.*

1. *Standard of Review.* In support of its Motion to Amend, the Plaintiff has framed its argument in the setting of Rule 15(a), Federal Rules of Civil Procedure, which provides, where pertinent, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

---

**1.** In addition, we heard argument on the Plaintiff's Motion to Compel, and for an award of Sanctions, which devolved into a scheduling dispute. At the time of the Hearing, we shared our general views, and we remanded the matter so as to allow the parties to "meet and confer," having in mind the guidance shared by the Court. In response to our direction, the parties submitted a stipulated modification to our Pretrial Schedule, and we issued our Order based upon the parties' stipulated agreement. Accordingly, we deny the Defendants' Motion to Compel, and for Sanctions, as moot.

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see also, *Thompson–El v. Jones,* 876 F.2d 66, 67 (8th Cir.1989).

"[A]lthough we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility, if the claims created by the amendment would be unable to withstand a Motion to Dismiss." *Ulrich v. City of Crosby,* 848 F.Supp. 861, 877 (D.Minn.1994), and cases cited therein. In sum, "the right to amend the pleadings is not absolute," and "the granting of a Motion to amend the pleadings is vested in the sound discretion of the Trial Court." *White Consolidated Industries, Inc. v. Waterhouse,* 158 F.R.D. 429, 434 (D.Minn. 1994); see also, *Upsher–Smith Laboratories v. Mylan Laboratories,* 944 F.Supp. 1411, 1442 (D.Minn.1996).

■ Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend "is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure." *Alholm v. American Steamship Co.,* 167 F.R.D. 75, 77 (D.Minn. 1996). Under Rule 16(b), a Court's Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." See, also *Notes of Advisory Committee on 1983 Amendment to Rule 16(b)* ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). As was recently expressed, in *Rouse v.*

*Farmers State Bank of Jewell,* 866 F.Supp. 1191 (N.D.Iowa 1994):

A scheduling order is an important tool in controlling litigation. *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 507, 510 (S.D.Iowa 1992). A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985). Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.* The Court in *Geiserman v. MacDonald,* 893 F.2d 787 (5th Cir.1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system.

Indeed "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is *** critical to maintaining integrity in court proceedings.'" *Alholm v. American Steamship Co.,* supra ·at 79, quoting *Rouse v. Farmers State Bank of Jewell,* supra at 1199.

■ *2. Legal Analysis.* In arguing the timeliness of its Motion, the Plaintiff underscores that the allowance of the amendment would cause the Defendants no prejudice. Of course, the perception of prejudice, like beauty, is largely in the eyes of the beholder. Here, the Defendants can legitimately complain that the untimely filing of the Plaintiff's Motion, at a time when discovery is essentially completed, either denies the Defendants an opportunity to fully explore the dimensions of the proposed claim, or requires a further delay in the scheduling of a Trial, as discovery on that issue ensues. We need not, however, exhaustively examine the issue of prejudice for, as we have already related, Rule 16(b) is driven by "good cause" on the part of the proponent of a newly formulated claim, and not by a showing of prejudice on the part of the nonmoving party.

■ Apparently realizing the impossibility of presenting any competent showing that, with diligence, it still would have been unable to timely seek to amend its Complaint, the

Plaintiff offers no justification for its extreme dereliction. Insofar as we are able to determine, the factual predicates for the proposed amendment are contained in a recorded statement, which was taken from Denser, on August 9, 1996—nearly two weeks before the Plaintiff filed its Complaint in this matter. Enigmatically, the Plaintiff awaited the expiration of some 17 months—after the taking of Denser's statement—to seek leave to assert a claim for punitive damages. If an amendment of the pleadings can be considered timely under these circumstances, then the good cause showing of Rule 16(b) is an apparition, and our role in facilitating the "just, speedy, and inexpensive" resolution of civil disputes, would be figmental. See, *Rule 1, Federal Rules of Civil Procedure.*

Therefore, finding no good cause for the Plaintiff's protracted delay in the presentment of its Motion to Amend, we deny the Motion as untimely.[2]

### B. *The Futility of the Motion to Amend.*

■ Taking our lead from the Plaintiff, which has substantively premised its Motion to Amend on the procedural requisites of Minnesota Statutes Section 549.191, we limit our analysis to the Plaintiff's fraud and breach of fiduciary duty claims.[3] As urged by the Defendants, and without exception by the Plaintiff, the Plaintiff has only alleged property damage claims. Accordingly, the issue presented is whether, under Minnesota law, a claim for punitive damages can be viable in the absence of a personal injury. We conclude that it cannot.

1. *Standard of Review.* The provisions of Minnesota Statutes Section 549.191 re-

quire plaintiffs to demonstrate an entitlement to plead a claim, under the laws of Minnesota, for punitive damages. See, *Ulrich v. City of Crosby,* supra at 867, citing *Fournier v. Marigold Foods, Inc.,* 678 F.Supp. 1420 (D.Minn.1988), and *McKenzie v. Northern States Power Co.,* 440 N.W.2d 183, 184 (Minn.App.1989). Under the circumstances of this action, however, a full recitation of the proofs required of the Plaintiff, in order to demonstrate a *prima facie* entitlement to plead punitive damages, is unnecessary, for we find and conclude that, as a pure legal matter, the Plaintiff's proposed punitive damage claim is barred by controlling Minnesota authority.

In the landmark case of *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226 (Minn.1982), the Minnesota Supreme Court first considered the propriety of punitive damages when the claimed injury was limited to a loss of property. There, the Court held that the Minnesota Legislature's enactment of Minnesota Statutes Section 549.20 had not listed the nature of the claimant's injury as a factor in determining the allowance of punitive damages, and that public policy warranted the preservation of such damages to personal injury claims—albeit in the context of an action involving strict liability in tort. Accordingly, for the first time in Minnesota law, a line of demarcation was drawn between those actions which, as a matter of law, held the potential for exemplary damages, and those which did not—and the delineation fell between claims for personal injury, and those for property damage.

Since the holding in *Eisert* arose in an action that was solely premised upon strict liability in tort, the full import of the Court's

---

2. Although our holding in this respect is fully dispositive of the Plaintiff's Potion to Amend, we address the substance of the Motion in the interests of completeness and, as our analysis makes clear, our denial of the Plaintiff's Motion is independently supported by each of these alternative bases.

3. In its Notice of Motion, and Motion, the Plaintiff described the substantive basis for its Motion to Amend, as follows:

> The ground for this Motion is that clear and convincing evidence exists demonstrating that Defendants in this matter acted with deliberate disregard for the rights of Plaintiff by engag-

ing, inter alia, in a pattern of intentional fraud and breach of fiduciary duty.

Since both the RICO, and the Robinson–Patman claims, do not admit of punitive damages, by virtue of their allowance of treble damages, we need not examine the factual predicates of these Federal claims, which are not subject to the regimen that governs the pleading of punitive damages under Minnesota law. More importantly, the parties have addressed the Plaintiff's Motion as constrained to the fraud, and breach of fiduciary duty claims and, with modest exception, we will not venture beyond the boundaries that the Plaintiff has scribed.

holding had yet to be explored. Therefore, in *Williams Pipe Line Co. v. City of Mounds View,* 704 F.Supp. 914 (D.Minn.1989), the Court held that the *Eisert* decision should be limited to actions that were based upon strict liability in tort. In so concluding, the Court reasoned, in part, as follows:

> Eisert appears to rest, in part, on the unique aspects of strict products liability law. Minnesota courts have not expanded its holding and continue to award punitive damages for other property damage claims. E.g., *Hydra–Mac, Inc. v. Onan Corp.*, 430 N.W.2d 846, 856 (Minn.Ct.App. 1988). Williams cites no case other than Eisert, from Minnesota or any other state, which has limited punitive damages only for property damage claims. A review of Minnesota law shows that punitive damages may be available for Mounds View's property damage claims based on negligence and res ipsa loquitur but they are precluded for any strict liability claim.

*Id.* at 921.

The *Hydra–Mac* case, upon which the Court relied, allowed a claim for punitive damages, premised upon an action for fraud in the sale of goods, that arose from property damage in the nature of lost profits. Notably, in deciding *Hydra–Mac,* the Minnesota Court of Appeals did not allude to the Supreme Court's holding in *Eisert,* nor did the Court otherwise address the propriety of punitive damages for a property loss.

Thereafter, in *Independent School District No. 622 v. Keene Corporation,* 511 N.W.2d 728 (Minn.1994), the Minnesota Supreme Court resumed its analysis, concerning the propriety of punitive damages in the context of a property damage claim, where it had last left the matter in *Eisert.* In *Keene,* the plaintiff, a School District, had commenced an action against the manufacturer of asbestos-containing fireproofing, to recoup the losses which the School District had suffered because of damage to its property—namely, those expenses associated with the removal of asbestos fireproofing, from the interior structure of a High School. In its Complaint, the School District alleged claims involving "negligence, strict liability, breach of implied warranties, breech [sic] of express

warranties, fraud, restitution, and conspiracy." *Id.* at 729. At the close of the Trial, the Jury awarded punitive damages and, while the Minnesota Court of Appeals had reduced the amount of those damages, it had also concluded that punitive damages were recoverable in a property damage action, because the claimants "had brought claims under other liability theories," than mere strict products liability. *Independent School District No. 622 v. Keene Corp.,* 495 N.W.2d 244, 250 (Minn.App.1993).

On appeal, the Supreme Court reversed the award of punitive damages, reasoning as follows:

> The school district argues that Eisert only applies to strict liability claims, and, therefore does not apply to this case because the school district brought claims under liability theories beyond strict products liability. We do not find this to be a sufficient distinguishing factor to limit the application of our reasoning in Eisert. As in Eisert, the school district here only suffered property damage. The remedy of punitive damages concerns the "vital state interest of protecting persons against personal injury," *Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727 (Minn.), cert. denied sub. nom. *Riegel Textile Corp. v. Gryc,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). We believe now as we did in Eisert that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people. We reverse the award of punitive damages in its entirety.

*Independent School District No. 622 v. Keene Corp.,* supra at 732. Following the Court's holding in *Keene,* the District Court, in *T.H.S. Northstar Associates v. W.R. Grace & Co.-Conn.,* 860 F.Supp. 640, 645 (D.Minn.1994), aff'd, 66 F.3d 173 (8th Cir. 1995)—which, like *Keene,* involved the sale and ultimate removal of asbestos-based fireproofing—denied a punitive damage award because the "case involved only property damage and no personal injury."

Given these authorities, we agree with the Defendants that the Plaintiff's effort to assert a claim for punitive damages, when it

has suffered no more than property loss, cannot be successful, as a matter of law. Nevertheless, relying upon the decision of the Minnesota Court of Appeals in *Molenaar v. United Cattle Company*, 553 N.W.2d 424 (Minn.App.1996), rev. denied (Minn., October 15, 1996), the Plaintiff invites us to limit the Court's holding in *Keene* to products liability actions. Of course, the fallacy of this urging is highlighted by the analysis in *Keene* itself, where the Minnesota Supreme Court expressly recognized that both the independent torts of fraud, and negligence, were raised in the School District's Complaint. Notwithstanding the presence of these non-products liability actions, the Supreme Court's holding was unequivocal, for it determined that the Trial Court's award of punitive damages should be reversed "in its entirety." *Independent School District No. 622 v. Keene Corp.*, supra at 732.

Moreover, we have serious reservations concerning the analytical soundness of the *Molenaar* Court's interpretation of *Keene*. Indeed, in a prior unpublished decision, see, *Barry v. Barry*, Civil No. 3–94–363, Slip. Op. at 8–10 (D.Minn., June 3, 1996), we substantially rejected the reading of *Keene*, which was adopted by the Court in *Molenaar*, in favor of the interpretation espoused by the Court in *Soucek v. Banham*, 524 N.W.2d 478, 480 (Minn.App.1994), rev. denied (Minn., January 25, 1995). At the time of that Report and Recommendation, *Molenaar* had not been decided, but we think it germane that, following the issuance of *Molenaar*, the District Court, the Honorable Ann D. Montgomery presiding, reconsidered the issue, in *Barry*, and implicitly rejected the interpretation advanced by the Court, in *Molenaar*.

In *Molenaar*, the majority of the panel rejected *Soucek* because of the Minnesota Supreme Court's intervening holding, in *Phelps v. Commonwealth Land Title Ins.*, 537 N.W.2d 271, 277 (Minn.1995), which sustained a punitive damage award in the context of an age discrimination claim under the Minnesota Human Rights Act ("MHRA"). Of course, absent a denial of due process, or some other constitutional infirmity, the Minnesota Legislature can authorize an award of punitive damages in such actions as are in the public interest, and the MHRA authorizes punitive damages, albeit in an amount no greater than $8,500.00, in age discrimination claims. See, *Minnesota Statutes Section 363.071, Subdivision 2*. As a consequence, the Court's holding, in *Phelps*, adds nothing to the *Keene* analysis. In our view, *Molenaar* does violence to the Supreme Court's express holding, in *Keene*, and we decline to follow *Molenaar* as being, by every appearance, an aberration.

For the same reason, we reject the reconstruction of Minnesota law that is contained in *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir.1997) ("However, *Soucek*, in turn, has been limited by what seems to be a more sensible interpretation of *Keene* [,] [t]he latest expression from a Minnesota appellate court limits *Keene* to products liability actions and permits the award of punitive damages for the deliberate disregard of rights, including for fraud," citing *Molenaar*), pet. for cert. filed, 66 USLW 3474 (U.S., December 11, 1997), upon which the Plaintiff also relies. In our view, no considered reading of *Keene* can responsibly delimit its holding to products liability actions, when the Supreme Court pointedly rejected that interpretation of prior law in *Keene*, itself. See, *Independent School District No. 622 v. Keene Corporation*, supra at 732.

Lastly, while we can agree with the Plaintiff that, for more than a century, the injury caused by fraud has been remedied, under Minnesota law, by a resort to punitive damages, cf., *Lynd v. Picket*, 7 Minn. 184 (1862), we can also confirm that the issue before us had not been precisely addressed, by the Minnesota Supreme Court, until *Eisert* and *Keene*. Since 1982, when *Eisert* was decided, Minnesota Statutes Section 549.20 has been amended on two separate occasions—in 1986 and in 1990. On neither occasion did the Minnesota Legislature attempt to legislatively reverse the Supreme Court's finding, that the presence of a personal injury is of critical significance to the assertion of a punitive damage claim. If, as the Plaintiffs urge, public policy demands the invocation of exemplary damages for purely property losses, which are owing to claims arising under the actions that the Plaintiff has alleged, then the

Minnesota Legislature does not appear to have shared the Plaintiff's perception of that need.[4]

Accordingly, the Plaintiff's Motion for leave to amend its Complaint, so as to assert a claim for punitive damages, is without substantive merit, and is denied.[5]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion for Leave to Amend Complaint to Add Claim for Punitive Damages [Docket No. 36] is DENIED.

2. That the Defendant's Motion to Compel, and for Sanctions [Docket No. 39], is DENIED, as moot.

4. Although not urged by the Plaintiff, we note that neither of the two statutory claims, which the Plaintiff has alleged, allow for an award of punitive damages. See, *Minnesota Statutes Sections 325F.67, and 325F.69*. This is a significant omission for the Minnesota Legislature has demonstrated a capacity to adopt specific statutory provisions, which authorize an award of punitive damages, when, in the exercise of its legislative discretion, the Legislature has deemed such an award to be socially advisable. See, e.g., *Minnesota Statutes Section 47.69, Subdivision 5*, (for consumer privacy violation "defendant shall be liable for \*\*\* punitive damages"); *Minnesota Statutes Section 176.138(d)*, (any person injured by violation of medical data access act has a cause of action for actual damages and punitive damages for a minimum of $5,000); *Minnesota Statutes Section 176.82* (authorizing punitive damages for workers' compensation retaliatory discharge claims); *Minnesota Statutes Section 325B.08*, (in action under Beer Brewers and Wholesalers Act, Court may "award punitive damages, as well as actual damages"); *Minnesota Statutes Section 325F.63*, (authorizing award of punitive damages for party injured by violation of State's "lemon" law); *Minnesota Statutes Section 363.071, Subdivision 2*, (allowing maximum of $8,500 in punitive damages to prevailing plaintiff under Minnesota Human Rights Act); *Minnesota Statutes Section 626.556, Subdivision 5*, (one who makes false report of child abuse may be liable for punitive damages); *Minnesota Statutes Section 626A.13, Subdivision 2(2)*, (violators of wiretap statute liable for punitive damages "in appropriate cases").

Since the Minnesota Legislature has not elected to provide for exemplary damages, as an express statutory remedy for the statutory violations that the Plaintiff has alleged, we should not presume to judicially engraft upon these Statutes, a remedy which the Minnesota Legislature, as is its prerogative, has decided not to establish by statutory enactment.

5. At the Hearing in this matter, we granted the request of the Plaintiff's "Owner, Chairman of the Board, and C.E.O.," see *Plaintiff's Complaint*, at ¶ 12, for an opportunity to express his views on the propriety of a punitive damage award. We do not overlook the assurances of the Plaintiff's highest management officer, that he has suffered emotional distress as a result of the Defendants' alleged conduct. While we can accept, *arguendo*, that such a claim intimates a personal injury, the Plaintiff's C.E.O. is not a Plaintiff in this proceeding, and his claim of emotional distress is not actionable as this case has been currently pled.

Lastly, while not addressed by the Plaintiff, with respect to the Plaintiff's defamation claim, we need only observe the obvious—namely, that, even if it were presumed that such a claim intimated a personal injury, the Record does not include clear and convincing evidence of culpable misconduct, as it would specifically relate to the elements of a defamation claim. See, e.g., *LensCrafters, Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1490 (D.Minn.1996), citing *Advanced Training Systems, Inc. v. Caswell Equipment Company, Inc.*, 352 N.W.2d 1, 7 (Minn.1984), and *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1502 (8th Cir.1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993); see also, *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1339 (8th Cir.1997).